**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| CORANDO ALANIZ, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:18-CV-297 |
| | § | |
| LIBERTY LIFE ASSURANCE | § | |
| COMPANY OF BOSTON, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Liberty Life Assurance Company of Boston's ("Liberty Life") Motion to Transfer Venue (#9), wherein it argues that, in the interest of justice and for the convenience of the parties and witnesses, the court should transfer this action from the Eastern District of Texas, Beaumont Division, to the Southern District of Texas, Houston Division. Plaintiff Corando Alaniz, Jr. ("Alaniz") filed a response in which he asserts that venue is both proper and convenient in the Eastern District of Texas, Beaumont Division. After considering the motion, the submissions of the parties, the pleadings, and the relevant law, the court is of the opinion that Liberty Life's request should be granted.

I. Background

Prior to the filing of this case, Alaniz was employed by Linn Operating Inc. ("Linn") as a Senior Staff Accountant. While employed at Linn, Alaniz participated in the Linn Operating Inc. Long Term Disability Plan (the "Plan"), which became effective on January 1, 2016. On or about December 1, 2016, Alaniz ceased working at Linn due to alleged chronic regional pain syndrome, peripheral neuropathy, and chronic abdominal pain. Alaniz maintains that he became

disabled on January 3, 2017. At that point, Alaniz filed for short-term disability benefits through Liberty Life, and his request was granted. Alaniz then applied for long-term disability benefits, but, on August 24, 2017, Liberty Life denied his claim. After the denial of benefits, Alaniz sought administrative remedies, which, at this point, have all been exhausted.

Alaniz now brings the instant suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B). In the pending motion, Liberty Life requests that, although venue is proper in the Eastern District of Texas, Beaumont Division, the court transfer this matter to the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404(a), because the convenience of the parties and witnesses weighs heavily in favor of a transfer. Alaniz opposes the transfer of this case, arguing that venue is proper and not inconvenient. Furthermore, Alaniz avers, both private and public factors weigh against the transfer. Plaintiff Alaniz resides in Fort Bend County, in Rosenberg, Texas, which is located within the Southern District of Texas. Defendant Liberty Life is a corporation that conducts business in both the Eastern District of Texas and the Southern District of Texas.

## II. Analysis

### A. General Considerations

Pursuant to the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Neither party disputes that venue is proper in the Eastern District of Texas because Liberty Life conducts business here and, thus, can be found within the district. Liberty Life also contends that venue is proper in the Southern District of Texas because Liberty Life

conducts business there and Alaniz resides in that district, and, as a consequence, that is where the breach took place.

When, as here, the selected venue is proper, a motion to transfer venue from one district or division to another is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 307 n.1 (5th Cir. 2008) (en banc), *cert. denied*, 555 U.S. 1172 (2009); *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004); *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004); *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003); *Bennett v. Moran Towing Corp.*, 181 F. Supp. 3d 393, 397 (S.D. Tex. 2016). The purpose of this statute "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26-27 (1960)); *accord Santander Consumer USA, Inc. v. Homer Skelton Enters., Inc.*, No. 3:17-CV-0568-G, 2017 WL 3492228, at *2 (N.D. Tex. Aug. 15, 2017); *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 830 (N.D. Tex. 2013).

Under § 1404(a), the movant has the burden to show good cause for a change of venue. *Volkswagen II*, 545 F.3d at 314 n.10 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied*, 493 U.S. 935 (1989); *Bennett*, 181 F. Supp. 3d at 397-98; *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 678 (S.D. Tex. 2014). In order to show good cause, the

moving party "must satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Volkswagen II*, 545 F.3d at 315 (internal quotations omitted); *see In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013); *Luke v. Transwood Logistics Inc.*, 18 F. Supp. 3d 806, 808 (S.D. Miss. 2014); *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 398 (S.D. Tex. 2011). "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315; *see In re Radmax, Ltd.*, 720 F.3d at 288; *Rasche*, 273 F.R.D. at 398; *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 769 (S.D. Tex. 2009). "When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Volkswagen II*, 545 F.3d at 315; *see In re Radmax, Ltd.*, 720 F.3d at 288; *Kelly Law Firm, P.C.*, 679 F. Supp. 2d at 769.

"[C]ourts have 'broad discretion in deciding whether to order a transfer.'" *Volkswagen II*, 545 F.3d at 311 (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998), *cert. denied*, 526 U.S. 1157 (1999)); *see Van Dusen*, 376 U.S. at 616; *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 244 (5th Cir. 2017) ("The trial court is entitled to broad discretion in ruling on motions to transfer venue . . . ."), *cert. denied*, 138 S. Ct. 1699 (2018); *Volkswagen I*, 371 F.3d at 203; *TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 458 (N.D. Tex. 2017). "[T]he trial court must exercise its discretion in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001) (citing *Radio Santa Fe, Inc. v. Sena*, 687 F. Supp. 284, 287 (E.D. Tex. 1988)); *accord Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 28 (1988); *TransFirst Grp., Inc.*, 237 F. Supp. 3d at 458; *Odom v.*

*Microsoft Corp.,* 596 F. Supp. 2d 995, 999 (E.D. Tex. 2009). "The first issue before the court is whether the transferee district qualifies under the applicable venue statutes as a judicial district where the civil action might have been brought." *In re Horseshoe Entm't*, 337 F.3d at 433; *accord Utterback*, 716 F. App'x at 244; *In re Red Barn Motors, Inc.*, 794 F.3d 481, 482 n.1 (5th Cir. 2015); *Volkswagen II*, 545 F.3d at 312; *Volkswagen I*, 371 F.3d at 203; *TransFirst Grp., Inc.*, 237 F. Supp. 3d at 459.

In the case at bar, the parties do not dispute that venue is proper and that the case could have been brought in the Houston Division of the Southern District of Texas because an action can "be brought in the district where the Defendant resides or may be found" and it is undisputed that Liberty Life conducts business in the Southern District of Texas. 29 U.S.C. § 1132(e)(2). When, as here, the movant meets this threshold requirement of establishing venue in the transferee district, motions to transfer are adjudicated by a district court through "individualized, case-by-case consideration[s] of convenience and fairness." *Van Dusen*, 376 U.S. at 622; *accord Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir.), *cert. denied*, 534 U.S. 972 (2001); *TransFirst Grp., Inc.*, 237 F. Supp. 3d at 459; *Bascom v. Maxim Integrated Prods., Inc.*, 534 F. Supp. 2d 700, 702 (W.D. Tex. 2008). "In considering a motion to transfer venue, courts weigh factors relating to (1) the litigants' convenience and (2) the public interest in the fair and efficient administration of justice." *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 509 (E.D. Tex. 2003); *see Volkswagen II*, 545 F.3d at 315; *Rasche*, 273 F.R.D. at 398; *Odom*, 596 F. Supp. 2d at 999; *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 771 (E.D. Tex. 2000). "The determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371 F.3d at 203

(citing *Action Indus., Inc.*, 358 F.3d at 340); *accord In re Radmax, Ltd.*, 720 F.3d at 287-88; *Volkswagen II*, 545 F.3d at 315; *Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*, 968 F. Supp. 2d 852, 854 (E.D. Tex. 2013); *Rasche*, 273 F.R.D. at 398.

Private interest factors, which involve the preferences and conveniences of the parties and witnesses, include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203); *see In re Archer Directional Drilling Servs., LLC*, 630 F. App'x 327, 328 (5th Cir. 2016); *Action Indus., Inc.*, 358 F.3d at 340 n.8; *Luke*, 18 F. Supp. 3d at 808.

The public interest factors address broader objectives, such as: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203); *see In re Archer Directional Drilling Servs., LLC*, 630 F. App'x at 328; *Action Indus., Inc.*, 358 F.3d at 340 n.8; *Luke*, 18 F. Supp. 3d at 809. "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315; *accord In re Rolls Royce Corp.*, 775 F.3d 671, 678 n.30 (5th Cir. 2014), *cert. denied*, 136 S. Ct. 45 (2015); *Robles v. USA Truck, Inc.*, No. L-08-122, 2009 WL 677835, at *5 (S.D. Tex. Mar. 12, 2009).

B. Private Interest Factors

1. The Relative Ease of Access to Sources of Proof

The first factor focuses on the locations of sources of proof, such as documents and physical evidence. In *Volkswagen II*, the Fifth Circuit explicitly rejected the argument that this factor is obsolete because advances in technology have lessened the burden of exchanging documents. *See Two-Way Media LLC v. AT & T, Inc.*, 636 F. Supp. 2d 527, 532 (S.D. Tex. 2009) (citing *Volkswagen II*, 545 F.3d at 316); *accord Innovation First Int'l, Inc. v. Zuru, Inc.*, 513 F. App'x 386, 393 n.2 (5th Cir. 2013); *Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 687-88 (W.D. Tex. 2013). "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316; *accord Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009); *Bascom*, 534 F. Supp. 2d at 704. "[A]lmost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd.*, 639 F. Supp. 2d at 767; *Healthpoint, Ltd.*, 939 F. Supp. 2d at 686.

Here, both Liberty Life and Alaniz concede that this factor is neutral because, other than the witnesses, the only sources of proof are documents that can be transported as needed. Thus, the first factor weighs neither in support of nor against transfer.

2. Availability of Compulsory Process to Secure the Attendance of Witnesses

The next factor to be considered is the availability of compulsory process to secure the attendance at trial of unwilling or hostile witnesses. *See Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 213 (5th Cir. 2010); *Volkswagen II*, 545 F.3d at 316; *Affinity Labs of Tex.*, 968 F. Supp. 2d

at 857. In this instance, Liberty Life has not indicated that transferring the case to the Southern District of Texas is necessary to compel the attendance of any witnesses. On the other hand, Alaniz has not indicated that retaining the case in Beaumont is necessary to compel the attendance of any witnesses. Accordingly, this factor is neutral.

3. Convenience and Cost of Attendance for Willing Witnesses

The relative convenience of the witnesses is often recognized as the most important factor to be considered when ruling on a motion under § 1404(a). *See Volkswagen II*, 545 F.3d at 316 (citing *Volkswagen I*, 371 F.3d at 203); *Affinity Labs of Tex.*, 968 F. Supp. 2d at 857; *Healthpoint, Ltd.*, 939 F. Supp. 2d at 690; *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009). "In terms of witnesses, venue is considered convenient in the district or division where the majority of witnesses are located." *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002) (citing *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 657 (E.D. Tex. 1999); *accord Mohamed*, 90 F. Supp. 2d at 775.

In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. *See PuraPharm Int'l (H.K.) Ltd. v. PurePharma*, No. H-14-3181, 2015 WL 1808582, at *3 (S.D. Tex. Apr. 20, 2015); *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009); *Shoemake*, 233 F. Supp. 2d at 832. Indeed, "'[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses.'" *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999) (quoting *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998)); *accord PuraPharm Int'l (H.K.) Ltd.*, 2015 WL 1808582, at *3; *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d

1039, 1043 (S.D. Tex. 2007). Moreover, it is the convenience of non-party witnesses, rather than of party witnesses, that is more important and is accorded greater weight in a transfer of venue analysis. *See Healthpoint, Ltd.*, 939 F. Supp. 2d at 690; *Two-Way Media LLC*, 636 F. Supp. 2d at 528; *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 762 (N.D. Tex. 2009); *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790-91 (S.D. Tex. 2005). Hence, it is "the location of key, non-party witnesses that dominates." *Mohamed*, 90 F. Supp. 2d at 775; *accord Cochran v. Kindred Hosps. Limited P'ship*, No. 3:16-cv-0129-B, 2016 WL 3926506, at *3 (N.D. Tex. July 20, 2016).

"[W]hether transfer is sought for key party or non-party witnesses, the moving litigant must make more than a general allegation that the key witnesses are inconveniently located." *Mohamed*, 90 F. Supp. 2d at 775 (citing *Robertson*, 42 F. Supp. 2d at 657); *accord Cochran*, 2016 WL 3926506, at *3; *BNSF Ry. Co.*, 667 F. Supp. 2d at 711; *Eliserio v. Floydada Hous. Auth.*, 388 F. Supp. 2d 774, 777 n.2 (S.D. Tex. 2005). "Conclusory allegations are not sufficient—the moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include." *Williams v. S. Towing Co.*, No. Civ. A. 03-2688, 2004 WL 60314, at *2 (E.D. La. Jan. 8, 2004); *accord BNSF Ry. Co.*, 667 F. Supp. 2d at 711; *Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 572 (N.D. Tex. 2005); *Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 574 (E.D. Tex. 2004). In determining whether a particular venue is more convenient to witnesses, the court should inquire into the nature and quality of the witnesses' potential testimony with regard to the issues in dispute rather than limit its investigation to a review of which party can produce the longer witness list. *See Isbell v. DM Records, Inc.*, No. Civ. A. 3:02-CV-1408-G, 2004 WL 1243153, at *14 (N.D.

Tex. June 4, 2004); *Holmes v. Energy Catering Servs., L.L.C.*, 270 F. Supp. 2d 882, 887 (S.D. Tex. 2003); *see also Barnett v. Kirby Inland Marine, Inc.*, 202 F. Supp. 2d 664, 668 (S.D. Tex. 2002). Courts have "uniformly refused to let applications for transfer become a battle of numbers." *Woolf v. Mary Kay, Inc.*, 176 F. Supp. 2d 642, 650 (N.D. Tex. 2001) (quoting *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 826 (S.D. Tex. 1993)); *accord Valeo, Inc. v. Fed.-Mogul Corp.*, No. EP-13-CV-115-PRM, 2013 WL 8480673, at *5 (W.D. Tex. Oct. 17, 2013).

Here, Liberty Life maintains that both the convenience and cost of obtaining the witnesses weigh heavily in favor of a transfer to the Southern District of Texas. To support its position, Liberty Life provides the court numerous Mapquest directions, which provide the total distance and estimated travel time between the starting points and ending points for the witnesses to both the Houston and Beaumont courthouses. According to Liberty Life, Alaniz lives 32 miles from the federal courthouse in Houston, whereas he lives 119 miles from the federal courthouse in Beaumont. Liberty Life's representatives and personnel involved in this matter do not reside in Texas and would thus be required to fly to travel to either courthouse. Nevertheless, Liberty Life asserts that the Beaumont airport does not provide an adequate variety or number of flights, so its representatives would have to fly through Bush Intercontinental Airport Houston ("IAH") and drive approximately 20 miles to the Houston federal courthouse or approximately 79 miles to the Beaumont federal courthouse.

As for the cost of obtaining non-party witnesses, Liberty Life argues that this factor also supports transferring the case. Alaniz's five primary care physicians, with regard to his claim for benefits, would be traveling between 99-115 miles to attend a trial in the Beaumont federal

courthouse. In contrast, should the case be transferred to Houston, the witnesses would be traveling between 13-29 miles. The court also recognizes that, in addition to the price of gasoline, witnesses traveling for a case accrue charges for meals, lodging, and other transportation costs. Therefore, the cost for these witnesses to attend trial would be significantly higher if the case remains in Beaumont.

In contrast, Alaniz counters that this factor is neutral because "this is generally an administrative record case in which any interaction pertaining to discovery or witnesses would be done electronically or via post." Further, Alaniz contends that, despite the purported difficulties of traveling to Beaumont pointed out by Liberty Life, Houston's traffic and congestion would make ground travel in the Southern District of Texas more difficult.

The court finds Liberty Life's argument persuasive. While Beaumont does have an airport, the Southeast Texas Regional Airport in Beaumont has a limited number of scheduled daily round trip flights on one airline to and from Dallas. Additionally, the non-party witnesses would need to travel a minimum of 99 miles to attend trial in Beaumont, in contrast to the maximum distance in Houston, which is 29 miles.

As discussed above, nothing in the record indicates that either Liberty Life or Alaniz currently intends to call any witnesses who live in the Eastern District of Texas or the Beaumont area. Overall, the convenience of the parties and witnesses would be served by a transfer of venue. A change of venue to the Southern District of Texas would reduce the travel expenses for all the parties and would not simply transfer costs from one party to another, as Alaniz himself lives in that district in a town considerably closer to the Houston federal courthouse. *See McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 528 (S.D. Tex. 2001) (finding that

reducing total costs and not just transferring costs supports a transfer). Further, "where another venue is more convenient to the residences of the parties, in terms of travel miles, over a more remote venue with no factual nexus to the case, the closer venue is the more appropriate." *Hanby*, 144 F. Supp. 2d at 678; *Robertson*, 42 F. Supp. 2d at 657. If the case remains in Beaumont, every witness, including Alaniz, would be required to commute a significant distance to the courthouse and in doing so, be forced to incur transportation, lodging, and meal expenses. In sum, the location of the parties and the witnesses, as well as the nature and quality of the witnesses' anticipated testimony, militate in favor of a transfer to the Houston Division of the Southern District of Texas.

4. Other Practical Problems and Considerations

a. Place of the Alleged Wrong

Although Alaniz contends that it would be more convenient for him to litigate in this forum because Liberty Life conducts business within the Eastern District of Texas, the district lacks any significant connection to the underlying dispute. *See Spiegelberg*, 402 F. Supp. 2d at 791; *Hanby*, 144 F. Supp. 2d at 678. The events giving rise to Alaniz's claims took place in Houston Division of the Southern District of Texas. Alaniz's residence, in Rosenberg, Texas, is the location where the short-term benefits were received and where the long-term benefits were allegedly owed and, thus, is "where the breach took place." 29 U.S.C. § 1132(e)(2). The place of the alleged wrong is an important factor in the transfer analysis, and, here, it weighs heavily in favor of a transfer. *Leblanc v. United States*, No. 09-0343, 2009 WL 2356437, at *2 (W.D. La. July 28, 2009) (citing *Spiegelberg*, 402 F. Supp. 2d at 791); *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 702 (E.D. Tex. 2007); *McGinnis v. Eli Lilly & Co.*, 181 F. Supp. 2d 684, 690 (S.D. Tex.

2002; *Hanby*, 144 F. Supp. 2d at 678. Because the alleged wrong appears to have occurred primarily, and presumably is continuing to occur, in the Southern District of Texas, this factor strongly supports a transfer.

b. Plaintiff's Choice of Forum

In determining the propriety of a transfer of venue under § 1404(a), the plaintiff's choice of forum is not accorded the decisive weight it enjoys under the doctrine of *forum non conveniens*. *See Volkswagen II*, 545 F.3d at 313 n.8; *Radio Santa Fe, Inc.*, 687 F. Supp. at 287. Today, a plaintiff's choice of forum "is not an independent factor within the *forum non conveniens* or the § 1404(a) analysis." *Volkswagen II*, 545 F.3d at 314 n.10. While not a distinct factor in the transfer of venue analysis, a plaintiff's choice of venue "is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer." *Id.* "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.* at 315; *Two-Way Media LLC*, 636 F. Supp. 2d at 531. Thus, this method of analysis "directly manifests the importance" that must be given the plaintiff's choice. *Volkswagen II*, 545 F.3d at 314 n.10. "If the defendant cannot meet this burden, the plaintiff's choice of forum should be respected." *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, No. 3:08-CV-1779-L, 2009 WL 918459, at *4 (N.D. Tex. Apr. 3, 2009) (citing *Volkswagen II*, 545 F.3d at 315). Hence, "[t]he plaintiff's choice of forum is normally given deference, especially when the forum is the plaintiff's 'home.'" *Houston Trial Reports, Inc.*, 85 F. Supp. 2d at 670; *accord Rimkus Consulting Grp. Inc. v. Balentine*, 693 F. Supp. 2d 681, 690 (S.D. Tex. 2010); *Spiegelberg*, 402 F. Supp. 2d at 790. Nonetheless, "[t]he preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *Isbell*, 2004 WL 1243153, at *16

(quoting *E. I. Dupont de Nemours & Co. v. Diamond Shamrock Corp.*, 522 F. Supp. 588, 592 (D. Del. 1981)); *accord Cochran*, 2016 WL 3926506, at *3; *Whistler Grp., Inc. v. PNI Corp.*, No. Civ. A. 3:03-CV-1536-G, 2003 WL 22939214, at *6 (N.D. Tex. Dec. 5, 2003).

Plaintiff's choice of forum is "accorded deference, but 'when [he] files suit outside [his] home forum, the weight accorded to the choice is diminished.'" *Bennett*, 181 F. Supp. 3d at 397 (quoting *Sivertson v. Clinton*, No. 3:11-cv-0836-D, 2011 WL 4100958, at *4 (N.D. Tex. Sept. 14, 2011)). Indeed, "close scrutiny is given to plaintiff's choice of forum when the plaintiff does not live in the judicial district in which plaintiff has filed suit." *Id.* (quoting *McCaskey*, 133 F. Supp. 2d at 529). Plaintiff's choice of forum is also accorded less deference when most, if not all, of the operative facts occurred elsewhere. *See Volkswagen II*, 545 F.3d at 315-18; *Salinas*, 358 F. Supp. 2d at 571; *accord Spiegelberg*, 402 F. Supp. 2d at 790; *Isbell*, 2004 WL 1243153, at *13; *Shoemake*, 233 F. Supp. 2d at 831. Where, as here, "the plaintiff's chosen forum has no factual nexus to the case and none of the parties reside in that forum," the plaintiff's choice of forum "carries very little significance if other factors weigh in favor of transfer." *Conway v. Lenzing Aktiengesellschaft*, 222 F. Supp. 2d 833, 834 (E.D. Tex. 2002) (citing *Hanby*, 144 F. Supp. 2d at 679). Under these circumstances, while the plaintiff's choice of forum should be given some weight, it should yield to the substantial factors militating in favor of a transfer to Houston. The pleadings in this case and the submissions of the parties reflect that no acts giving rise to Alaniz's claims arose in the Eastern District of Texas. Instead, they arose in the Southern District of Texas, where Alaniz resides, where he visited his treating physicians, and where his benefits were denied.

c. Possibility of Delay and Prejudice if Case is Transferred

One practical problem to be considered with regard to a transfer of venue is the possibility of delay because "[a] prompt trial . . . is not without relevance to the convenience of parties and witnesses and the interest of justice." *Dupre*, 810 F. Supp. at 827 (quoting *Fannin v. Jones*, 229 F.2d 368, 369-70 (6th Cir.), *cert. denied*, 351 U.S. 938 (1956)); *accord Frederick*, 558 F. Supp. 2d at 702. In *In re Horseshoe Entm't*, the Fifth Circuit "recognize[d] that in rare and special circumstances a factor of 'delay' or of 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence." 337 F.3d at 434; *United Galvanizing, Inc. v. Imperial Zinc Corp.*, No. H-08-0551, 2010 WL 4393990, at *5 (S.D. Tex. Oct. 29, 2010) (noting that an example of rare and special circumstances would be if a party requested a transfer on the eve of trial (quoting *Z-Tel Commc'ns, Inc.*, 331 F. Supp. 2d at 578)); *see also Spiegelberg*, 402 F. Supp. 2d at 792; *Shoemake*, 233 F. Supp. 2d at 834-35.

The court, however, is not persuaded that a transfer would cause any delay, much less a detrimental delay. As Liberty Life noted, the pending motion was filed contemporaneously to its Answer. A transfer of venue at the inception of litigation and before a scheduling order is entered should neither result in a significant delay for resolving Alaniz's claims nor prejudice any party. *See Evolutionary Intelligence, LLC v. Apple, Inc.*, No. 6:12-CV-00783, 2013 WL 8360309, at *8 (E.D. Tex. Aug. 27, 2013); *Lozada v. Regal Ware, Inc.*, No. EP-07-CV-448-PRM, 2008 WL 4328011, at *7 (W.D. Tex. Sept. 15, 2008); *Moreno v. Milk Train, Inc.*, 182 F. Supp. 2d 590, 598 (W.D. Tex. 2002); *McGinnis*, 181 F. Supp. 2d at 687-91. Therefore, a transfer of venue at this juncture would not necessarily lead to a delayed disposition or militate against transfer.

C. Public Interest Factors

1. Administrative Difficulties Flowing from Court Congestion

In addition to private interest considerations, the court must also consider public interest factors in determining whether a case should be transferred to another district. *See Volkswagen II*, 545 F.3d at 315; *Volkswagen I*, 371 F.3d at 203; *ThinkTank One Research, LLC v. Energizer Holdings, Inc.*, No. M-15-0389, 2015 WL 4116888, at *3 (E.D. Tex. July 7, 2015); *Purdy v. Munden*, 356 F. Supp. 2d 658, 659 (E.D. Tex. 2005). One element to be considered stems from the administrative difficulties that arise when courts become congested with litigation that should have been handled at its place of origin. *See Frederick*, 558 F. Supp. 2d at 702; *Langton*, 282 F. Supp. 2d at 511; *see also Canine Caviar Pet Foods, Inc. v. Pied Piper Pet & Wildlife, Inc.*, No. 3:09-CV-00677L, 2009 WL 2568206, at *5 (N.D. Tex. Aug. 19, 2009). The efficient administration of the court system is vital to all litigants, as well as the public at large. *See Ferens v. John Deere Co.*, 494 U.S. 516, 529 (1990).

The dockets in the Southern District of Texas are not as congested as those in the Eastern District of Texas. Statistics maintained by the Administrative Office of the United States Courts reflect that, as of March 1, 2018, there were 4,025 cases pending in the Eastern District of Texas, with an average of 575 cases per each district judge. In contrast, in the Southern District of Texas, there were 5,257 cases pending, with an average of 210 cases per each district judge. Thus, the heavier case load per judge in the Eastern District of Texas will likely cause greater delays if the case is not transferred. *See Shoemake*, 233 F. Supp. 2d at 835. Although the Eastern District of Texas may presently have a slightly shorter median time between filing and trial when compared to the Southern District of Texas, "'speed of disposition of lawsuits without any

Beaumont connection is not a valid reason for forum shopping,' although filing cases without any rational relationship to the District could create congestion beyond its judicial resources." *Hanby*, 144 F. Supp. 2d at 679 (quoting *Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*, 957 F. Supp. 843, 844 (E.D. Tex. 1997)).

Accordingly, transferring this case, which has no significant factual nexus to the district, will relieve congestion in the Eastern District of Texas and avoid unnecessary burden on the court's judicial resources. *See Rock Bit Int'l, Inc.*, 957 F. Supp. at 844.

2. <u>Local Interest in Having Localized Disputes Decided at Home</u>

Another element to be considered is the local interest in having localized controversies decided at home. *See Volkswagen II*, 545 F.3d at 317-18; *Volkswagen I*, 371 F.3d at 203; *Frederick*, 558 F. Supp. 2d at 702; *Spiegelberg*, 402 F. Supp. 2d at 792; *Purdy*, 356 F. Supp. 2d at 659. Again, this public interest factor favors a transfer, as the incident giving rise to this action occurred in the Southern District of Texas, where a majority of the witnesses reside and are employed. It is contrary to the public interest to encumber the citizens of this district with a case that has no significant connection to, and little impact upon, the local community. *See Volkswagen II*, 545 F.3d at 317-18; *Volkswagen I*, 371 F.3d at 206; *Spiegelberg*, 402 F. Supp. 2d at 792; *Shoemake*, 233 F. Supp. 2d at 835; *Hanby*, 144 F. Supp. 2d at 679. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. *Volkswagen I*, 371 F.3d at 206; *Healthpoint, Ltd.*, 939 F. Supp. 2d at 693; *Mohamed*, 90 F. Supp. 2d at 766. Accordingly, it is more appropriate to impose the burden of jury duty on citizens of the Southern District of Texas than on persons residing in the Eastern District of Texas. *See Boonma v. Bredimus*, No. 3:05-CV-0684-D, 2005 WL 1831967, at *6 (N.D. Tex. July 29, 2005)

(noting Texas jurors' interest in case but nonetheless dismissing case on *forum non conveniens* grounds where Thailand had a stronger interest); *Radio Santa Fe, Inc.*, 687 F. Supp. at 288 (granting § 1404 motion and citing comparative strength of jurors' interest in outcome of litigation in transferee district).

3. Familiarity of the Forum with the Law and Avoidance of Unnecessary Problems of Conflict of Laws

No conflict of laws problems will result from the proposed transfer because federal law governs the dispute without regard to forum. *See* 28 U.S.C. § 1338; *see also Shoemake*, 233 F. Supp. 2d at 835. There is, therefore, no difference between the two districts' familiarity with the law governing this case or any reason to retain the case in this forum due to the controlling law.

Hence, on balance, the public interest factors favor a transfer of this case to the Southern District of Texas. Furthermore, Alaniz does not contend that he would be denied a fair trial in the Southern District of Texas. In the absence of such a concern, Liberty Life has met its burden to show good cause for a transfer of venue in that a balance of the relevant factors and circumstances substantially favor a trial in Houston. Venue is proper in the Southern District of Texas because that is where the breach occurred. *See* 29 U.S.C. § 1132(e)(2). "The connection between [Plaintiff's] claims and this district 'is "minuscule"' and 'a transfer pursuant to Section 1404(a) is in order.'" *Nat'l Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991) (quoting *Sinko v. St. Louis Music Supply Co.*, 603 F. Supp. 649, 652 (W.D. Tex. 1984)).

## III. Conclusion

Consistent with the foregoing analysis, the court finds that this case should be transferred to the Southern District of Texas, Houston Division. Therefore, Liberty Life's motion (#9) is

GRANTED. An order transferring the case to the Southern District of Texas, Houston Division will be entered separately.

SIGNED at Plano, Texas, this 3rd day of October, 2018.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE